Frederick B. SPIELMAN, Jr., Petitioner,

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

No. 92–AA–37.

District of Columbia Court of Appeals.

Argued March 30, 1993.
Decided May 13, 1993.

W. Kevin Reynolds, for petitioner. Bruce C. Bereano was on the brief for petitioner.

Rosalyn Calbert Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before STEADMAN, SCHWELB and KING, Associate Judges.

SCHWELB, Associate Judge:

Frederick B. Spielman became a firefighter in 1969. On August 6, 1987, he suffered an apparent heart attack while on duty. As a result, he became unable to carry out his duties. Claiming that his inability to work as a firefighter was incurred in the line of duty, he applied for the more generous retirement benefits available to disabled firefighters whose disability was so incurred. *See* D.C.Code § 4–616 (1989); *cf. id.* § 4–605(a).

The Police and Firefighters' Retirement and Relief Board (the Board) denied Spielman's claim in a comprehensive written decision. The Board held that Spielman's disability was not caused by his firefighting duties, but was the result of his bad health habits. Specifically, the Board found that Spielman's gross overeating, his

failure to control his weight,[1] his smoking of as many as two packs of cigarettes per day during a part of the relevant period, and his failure regularly to take his medication for hypertension, placed him at high risk and effectively caused the disability of which he complained.

▮ Spielman has asked this court to review the Board's decision, contending that it is not supported by substantial evidence. Essentially for the reasons stated by the Board, we disagree. Dr. Aly Sabet testified, *inter alia*, that any effects which Spielman's duties might have had on his condition were "dwarfed by the obvious combination of risk factors that I mentioned," of which "the smoking, the obesity, [and] the hypertension are the biggest." The Board's findings are amply supported by this and other evidence. *Allen v. District of Columbia Police and Firefighters' Retirement and Relief Bd.*, 528 A.2d 1225, 1229 (D.C.1987); *see also Liberty v. District of Columbia Police and Firemen's Retirement and Relief Bd.*, 452 A.2d 1187, 1189 (D.C.1982) (per curiam) (rejecting claims similar to Spielman's).

▮ Spielman contends that the Board failed to address each material contested issue of fact. *See generally, DiVincenzo v. District of Columbia Police & Firefighters' Retirement and Relief Bd.*, 620 A.2d 868 (D.C.1993). He claims that a "critical material contested fact not addressed by the Board was to what extent job-related conditions contributed to Firefighter Spielman's ischemic heart disease and hypertension." The Board effectively addressed this issue by accepting Dr. Sabet's testimony that Spielman's own self-destructive habits were the primary cause of his illness. We reject, as did the court in *Liberty*, 452 A.2d at 1190 & n. 3, the notion that the ordinary stress of Spielman's job can be treated as the cause of his obesity,

excessive smoking and failure to take medication.[2]

▮ Spielman also claims that, for a period of over four years, his injury of August 6, 1987 was treated, for purposes of sick leave, salary, and the payment of medical services, as having been incurred in the performance of duty. He contends that this amounted to a determination by the Board that his condition was so incurred. At a prior hearing in 1988, however, the Board held only that Spielman was not totally disabled. The Board did not reach the question whether the disability was incurred in the line of duty.

The decisions on which Spielman relies addressed situations entirely different from those presented here. In *Hyde v. Tobriner*, 117 U.S.App.D.C. 311, 312, 329 F.2d 879, 880 (1964), the petitioner, a police officer, presented substantial evidence showing that his arthritis was incurred in the performance of his duties, including a certificate to that effect of a physician member of the Board. In *Blohm v. Tobriner*, 122 U.S.App.D.C. 2, 350 F.2d 785 (1965) (per curiam), the petitioner, another police officer, was thrown 95 feet through the air while pursuing a speeder, and thereafter suffered headaches which a physician member of the Board described as "post-traumatic." In *Walsh v. District of Columbia Police and Firefighters' Retirement and Relief Bd.*, 523 A.2d 562, 566 (D.C.1987), the question was whether the complaints of the petitioner, also a police officer, were feigned or genuine, and the Board's approval of his extensive sick leave was viewed by the court as one of several factors indicating that they were authentic.[3]

None of the cases on which Spielman relies holds that the initial payment of benefits, such as sick leave, precludes the

---

1. At the time of his apparent attack, Spielman weighed 309 pounds, an increase of 111 pounds over his weight at the time he joined the force.

2. Having smoked to excess and over-eaten, Spielman cannot be heard to complain that his superiors did not prevent him from doing so.

3. The opinion in *Carroll v. Tobriner*, 253 F.Supp. 87 (D.D.C.1966), on which Spielman also relies, is too cryptic in its articulation of the facts and issues to be of much assistance to us here.

Board from contending, in a proceeding such as this one, that the petitioner's condition was not incurred in the line of duty. We agree with Spielman that the Board should have explicitly addressed this issue, but conclude that in the light of this record, its failure to do so is of no substantial consequence.

For the foregoing reasons, the Board's decision is hereby

*Affirmed.*